UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
THOMAS GESUALDI, et al.,

                     Plaintiffs,

                                    **REPORT AND
RECOMMENDATION**
        -against-                        CV 11-5937 (JS)(ARL)

SPECIALTY FLOORING SYSTEMS, INC.,

                     Defendant.
----------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

       This matter has been referred to the undersigned by District Judge Seybert for the purpose

of issuing a report and recommendation with respect to the plaintiffs' supplemental

documentation in support of their motion for damages, including reasonable attorneys' fees and

costs. The plaintiffs have submitted a supplemental letter motion for damages and rely on the

previously submitted (a) declarations of Joseph Puccio, Theresa Cody, Ken Jones, Angelos

Poulos, and Noelia Hurtado, (b) supplemental statement of amounts due, and (c) supplemental

declarations of Noelia Hurtado and Joseph Puccio[1] in support of their motion. Despite having

been served with the motion, the defendant has not submitted papers in opposition to the motion.

Based on the evidence submitted, the undersigned respectfully reports and recommends that the

plaintiffs be awarded damages in the amount of $22,373.34, comprising of $2,176.64 in unpaid

contributions, $110.45 in interest on the unpaid contributions, $1,088.95 in interest on late paid

contributions due for the months July 2008, May 2009 and June 2009, $130.17 in liquidated

_____

      [1]The Supplemental Declarations of Noelia Hurtado and Joseph Puccio incorporate the
statements set forth in the original Declarations. Accordingly, the court will only refer to the
Supplemental Declarations in Report.

damages, $1,612.30 in audit fees, $16,549.50 in attorneys fees, and $705.33 in costs. The undersigned further reports and recommends that defendant be directed to permit an audit of its books and records for the period January 2011 through January 2012.

## BACKGROUND

The plaintiffs, the trustees and fiduciaries of the Local 282 Welfare, Pension, Annuity, Job Training Trust, Vacation and Sick Leave Trust Funds ("the Funds" or "plaintiffs") commenced this lawsuit by filing the summons and complaint on December 6, 2011. The defendant, Specialty Flooring Systems, Inc. ("defendant"), was served with a copy of the summons and complaint by personal service upon Michelle Velardi, the managing agent of the defendant, on December 8, 2011. The defendant failed to answer or otherwise respond to the complaint. On January 11, 2012, the Clerk of the Court certified the defendant's default based upon its failure to answer or otherwise appear in this action. On April 4, 2012, the plaintiffs moved for a default judgment and referred the matter to the undersigned for a report and recommendation as to whether a default judgment should be entered, and if so, the proper amount of damages to be awarded, including reasonable attorneys' fees and costs. The undersigned issued a report and recommendation on October 9, 2012, recommending that the district court grant plaintiffs' motion for a default judgment, but that plaintiffs' motion for an award of damages be denied without prejudice to a renewal thereof upon submission of affidavits and/or the additional documentation needed to verify the requested award. On January 7, 2013, the district court adopted the report and recommendation in its entirety and ordered in pertinent part the following:

Plaintiffs may re-file a motion for damages and attorneys' fees, with the

2

appropriate documentation needed to verify the requested award, on or before
February 4, 2013. In accordance with Judge Lindsay's R&R, Defendant shall
submit, on or before January 18, 2013, remittance reports from January 2011
through January 2012. If Defendant fails to do so, Plaintiffs shall calculate
damages pursuant to the Trust Agreement, and include any said request in their
renewed motion for damages.

Defendant has not submitted the remittance reports from January 2011 through January 2012.

Plaintiffs timely refiled the instant motion for damages.

## DISCUSSION

A default constitutes an admission of all well-pleaded factual allegations in the

complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L.*

*Realty Corp.,* 973 F.2d 155, 158 (2d Cir.), *cert. denied,* 506 U.S. 1080 (1993). A default also

"effectively constitutes an admission that the damages were proximately caused by the defaulting

party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is

based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin,* 980 F.

Supp. 107, 111 (E.D.N.Y. 1997). "If the defaulted complaint suffices to establish liability, the

court must conduct an inquiry sufficient to establish damages to a reasonable certainty." *Finkel*

*v. GB Legend Elec. Contractors Corp.,* No. 10-CV-1559 (RRM)(JO), 2011 WL 1153678, at *3

(E.D.N.Y. Mar. 11, 2011) (internal quotation marks and citations omitted). The movant need

only prove that the "compensation sought relate[s] to the damages that naturally flow from the

injuries pleaded." *Greyhound,* 973 F.2d at 159. An evidentiary hearing is not required so long as

there is a basis for the damages awarded. *Transatlantic Marine Claims Agency v. Ace Shipping*

*Corp.,* 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted). Moreover, Fed. R. Civ. P. 54(c)

"limits the damages recoverable by the plaintiff following a default judgment to the type and

quantity of damages demanded in the complaint." *Ames v. STAT Fire Suppression, Inc.,* 227 F.R.D. 361, 362 (E.D.N.Y. 2005); *see* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"). Here, the documentary evidence submitted by the plaintiffs provide the basis for an award. *Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir. 1991).

The complaint in this action seeks damages for breach of contract in violation of the Employees Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq. ("ERISA") and the Labor Management Relations Act of 1947, 29 U.S.C. § 141, et seq. ("LMRA"). The Funds are employee benefit plans and multi-employer employee benefit plans as defined by ERISA, 29 U.S.C. § 1002(3) and (37). Compl. at ¶ 4. The plaintiffs are trustees and fiduciaries of the Funds within the meaning of 29 U.S.C. § 1021(21). *Id*. at ¶ 3. The defendant was an employer within the meaning of 29 U.S.C. § 1002(5) and a party to a Collective Bargaining Agreement and Trust Agreement (the "Agreements").[2] *Id*. at ¶¶ 6-8. Pursuant to the Agreements, the defendant is required to make benefit contributions to the Funds for eligible employees. *Id*. at ¶ 9. The defendant is also required to submit  remittance reports setting forth the employees who performed work covered by the Agreements and the number of hours each such employee worked in covered employment. *Id*. at ¶ 11. Pursuant to the Agreements, the defendant is also

---

[2]The defendant did not sign the Collective Bargaining Agreement governing the period between July 1, 2008 and June 30, 2011, but is deemed to be a party by virtue of the fact that it made "contributions at the rates stated in the . . . agreement applicable to the industry." *Puccio Supplemental Decl*., dated June 4, 2012, Ex. A, Trust Agreement, Art. 1X, Sec. 1(a). It is worth noting that the remittance reports submitted by the defendant during that time period also contain the following statement above the signature line; "BY SIGNING THIS REPORT YOU AGREE TO ACCEPT THE TERMS OF THE CURRENT LOCAL 282 INDUSTRY COLLECTIVE BARGAINING AGREEMENT COVERING THE WORK PERFORMED BY YOUR EMPLOYEE."

required to permit and cooperate in the conduct of audits of its books, payroll records and reports to ensure compliance with the terms of the Agreements and to ascertain the amount of benefit contributions to the Funds. *Puccio Supplemental Decl.*, dated June 4, 2012, Ex. A.

According to the complaint, an audit of the defendant's books for the period September 26, 2005 through October 31, 2006, Audit # 07-0775, determined that the defendant had failed to make payments owed to the plaintiffs totaling $1,524.78. Compl. at ¶ 17. An audit of the defendant's books for the period November 1, 2006 through June 30, 2007, Audit # 08-0425-R1, determined that the defendant had failed to make payments owed to the plaintiffs totaling $1,447.24. *Id*. at ¶ 19. Another audit of the defendant's books for that same time period, Audit # 08-0424, determined that the defendant owed $651.86 in contributions. *Id*. at ¶ 21. An audit of the defendant's books for the period July 1, 2007 through June 30, 2008, Audit # 09-0404, determined that the defendant had failed to make payments owed to the plaintiffs totaling $5,293.50. *Id*. at ¶ 23. Another audit of that same period, Audit # 09-403 reflected that the defendant owed $338.65 in contributions. *Id.* at ¶ 25.[3] In addition, the defendant made late payments from January to July 2008 and in May, June and August 2009. *Id*. at ¶ 28. Since January 2011, the defendant has failed to submit remittance reports. *Id*. at ¶ 32. On November 8, 2011, the plaintiffs sent the defendant a letter requesting payment of the audited deficiency and unpaid interest, liquidated damages, attorneys' fees and costs on the late contributions.[4] *Id.* at ¶¶

---

[3]Although it is not specified in the Complaint, separate audits were conducted for Tier 1 and Tier 2 employees.

[4]On May 11, 2009, the plaintiffs had also requested payment of the audited deficiencies for the period from November 1, 2006 through June 30, 2007 and July 1, 2007 through June 30, 2008. *Id.* at ¶¶ 20, 24.

18, 24, 26, 30.  In addition, on January 7, 2013, the district court ordered defendant to submit the remittance reports from January 2011 through January 2012, but defendant failed to do so.

In their supplemental letter submission, plaintiffs now seek (a) an award of $9,275.23 for the audited unpaid contributions for the time  periods of September 26, 2005 through October 31, 2006 (Audit # 07-0775); November 1, 2006 through June 30, 2007 (Audit # 08-0424 and #08-0425-RI); and July 1, 2007 through June 30, 2008 (Audit # 09-0403 and #09-0404); (b) an order directing defendants to submit audit reports and to submit to an audit for the time period of January 2011 through January 2012; (c) an award of $9,242.42, plus $4.56 in per diem interest from June 4, 2012 for interest on the audits as well as the late paid contributions for July 2008, May 2009 and June 2009); (d) an award of $9,290.75, plus $4.56 in per diem liquidated damages from June 4, 2012; (e) an award of $5,849.80 in audit fees; and (f) an award of $19,711.33 in attorneys' fees and costs.  *See Bardavid Letter*, dated January 28, 2013, at 2.  The court will examine each of the plaintiffs' requests by the type of award sought.

**(A)    Unpaid Contributions Based on the Five Unpaid Audits**

Plaintiffs have provided the payroll audit reports to the court for the following time periods.  *See Hurtado Supplemental Decl*., dated June 4, 2012, ¶¶ 18-19; *Jones Decl*., dated Mar. 29, 2011, Exs. A-C; *Poulos Decl*., dated Mar. 28, 2012, Exs. A-B.

**(1)    Time Period of September 26, 2005 through October 31, 2006**

For the period September 26, 2005 through October 31, 2006, the payroll audit report for Audit #07-0775 reflects that $1,524.78 is due and owing.  *See Jones Decl*., dated Mar. 29, 2011, Ex. A.  Accordingly, the undersigned recommends that plaintiffs be awarded delinquent contributions in the amount of $1,524.78 for this time period.

### (2)    Time Period of November 1, 2006 through June 30, 2007

For the period November 1, 2006 through June 30, 2007, two audits were conducted. With respect to the first audit, although the Declaration of Ken Jones states that the payroll audit report that was issued on January 31, 2011 for Audit # 08-0425-RI reflects that $1,447.24 is due and owing, *id.* ¶¶ 41-44, the underlying report attached as an Exhibit C is dated March 15, 2008, refers to Audit # 08-0425, and does not reflect this amount. Accordingly, having no basis upon which to determine the appropriate amount of damages, if any, for this time period, the undersigned recommends that plaintiffs' motion for an award of damages based on Audit # 08-0425-RI be denied, at this time, without prejudice to a renewal thereof upon submission of the additional documentation needed to verify the requested award for the period November 1, 2006 through June 30, 2007 pursuant to the first audit. *See Transatlantic Marine Claims Agency, Inc. v. M/V Hyundai Emperor,* 109 F.3d 105, 111 (2d Cir. 1997) (holding the court must ensure that there is a "basis for the damages specified in the default judgment" and that the amounts are warranted).

With respect to the second audit (for Tier 1 employees), for the period November 1, 2006 through June 30, 2007, the payroll audit report for Audit #08-0424 reflects that $651.86 is due and owing. *See Jones Decl.*, dated Mar. 29, 2011, ¶¶ 28-34, Ex. B. Accordingly, the undersigned recommends that plaintiffs be awarded delinquent contributions in the amount of $651.86 for this time period.

### (3)    Time Period of July 1, 2007 through June 30, 2008

For the period July 1, 2007 through June 30, 2008, two audits were conducted. With respect to the first audit (for Tier 1 employees), for the period July 1, 2007 through June 30,

2008, the payroll audit report for Audit #09-403 reflects that $4,675.68 is due and owing. *See Poulos Decl.,* dated Mar. 28, 2012, ¶¶ 13-20, Ex. A. However, this amount far exceeds the amount that plaintiffs requested in their complaint pursuant to Audit #09-403 as well as the amount of damages requested in their supplemental letter, dated January 22, 2013, *viz.* $338.65. With respect to the second audit (for Tier 2 employees), for the period July 1, 2007 through June 30, 2008, the payroll audit report for Audit #09-404 reflects that $23,700.18 is due and owing. *See Poulos Decl.,* dated Mar. 28, 2012, ¶¶ 27-30, Ex. B. However, this amount likewise far exceeds the amount that plaintiffs requested in their complaint pursuant to Audit #09-404 as well as the amount of damages requested in their supplemental letter, dated January 22, 2013, *viz.* $5,293.50.

In short, the documentary evidence proffered by the plaintiffs fails to support the requested award for delinquent contributions for this time period. In addition, the amounts sought in this application exceed the amounts for the respective audits that were demanded in the pleadings. *See* Fed. R. Civ. P. 54(c). Accordingly, having no basis upon which to determine the appropriate amount of damages, if any, for this time period, the undersigned recommends that plaintiffs' motion for an award of damages based on Audit #09-403 and Audit #09-403 be denied, at this time, without prejudice to a renewal thereof upon submission of the additional documentation needed to verify the requested award for this time period.

**(B)    Remittance Reports and Audit for January 2011 through January 2012**

The plaintiffs seek an order again directing the defendant to produce remittance reports from January 2011 through January 2012 as well as to submit to an audit for the stated period in order to determine the amounts owed. The undersigned previously recommended and the district

court ordered the defendant to submit reports from January 2011 through January 2012, but the defendant failed to do so. In such an event, the district court made clear that "[p]laintiffs shall calculate damages pursuant to the Trust Agreement, and include any said request in their renewed motion for damages." In their supplemental letter motion dated January 28, 2013 the plaintiffs represent that they are unable to rely upon the estimate provisions set forth in Article IX Section 1(e) of the Trust Agreement to calculate amounts owed by defendants for this time period and state that they "are not entitled at this time to a definitive monetary award for the time period of January 2011 through January 2012." *See Bardavid Letter*, dated January 28, 2013, at 2. With respect to the plaintiff's renewed request for the production of the missing reports, the undersigned declines to recommend that defendant be ordered to again submit the remittance reports as such an order has proven to be futile and the district court has given clear instructions as to the procedure to be followed in the event of noncompliance.

The undersigned will, however, recommend that an order be issued directing the defendants to permit and cooperate in an audit of its books and records and to furnish to the Funds information, books, records and reports in accordance with ERISA and its obligations under the Agreements so that the plaintiffs may be afforded one final opportunity to ascertain if there were any delinquent contributions owed by the defendant for the period January 2011 through January 2012. "The Supreme Court has determined that the right to an audit is consistent with the policies underlying ERISA, the duties under ERISA, and the "positions of the administrative agencies charged with the administration of ERISA.'" *Mason Tenders Dist. Council Welfare Fund v. Asturias, Inc.,* 2003 WL 179770, at *2 (S.D.N.Y. Jan. 27, 2003). Where, as here, the Collective Bargaining Agreement obligated the defendant to permit an audit

and, it has not done so, the trustees are entitled to an order directing the defendant to produce its books and records for such an audit. Thus, the court recommends that an order be issued directing the defendant to permit an audit of their book and records. The undersigned further recommends that if defendant fails to permit an audit, plaintiffs shall calculate damages, if any, pursuant to the Trust Agreement.[5]

**(C)     Interest**

ERISA section 502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B) mandates an award of interest on unpaid contributions. In addition, pursuant to LMRA, the Funds are entitled to interest on contributions paid late, but made prior to the commencement of the action. *See Finkel*, 2011 WL 1153678, at *6. Here the plaintiffs have based their interest calculation on Article IX, Section 3 of the Agreement, as amended on October 28, 2003, which provides in pertinent part that the Employer "shall be obligated to pay interest "at the rate of 1½% per month of each monthly amount due for each month." *Puccio Supplemental Decl.*, dated June 4, 2012, Ex. A and Amendment (unnumbered ninth page after page 51). The interest rate, calculated at the rate of

---

[5]In the undersigned's previous Report and Recommendation, the plaintiffs sought an award of $97,870.87 in unpaid contributions for January 2011 through January 2012 wherein counsel for the plaintiffs admittedly calculated the $97,870.87 estimate based on "the last twelve *positive* reports," rather than the "previous twelve months of reports," regardless of whether they were positive or negative. *See Hurtado Supplemental Decl.*, dated June 4, 2012, ¶ 16. Specifically, counsel estimated the contributions due for 2011 based on the defendant's May 2009 and June 2008 reports, which reflected 153.5 and 1,471 hours of covered employment, respectively. However, there is no indication that the defendant stopped submitting remittance reports until January 2011. In fact, the plaintiffs have annexed remittance reports for January and February 2010 indicating that the defendant had no reportable hours. The plaintiffs have even acknowledged that in the case of the Tier 2 account "the last twelve submitted reports did not contain hours." Since the plaintiffs have again failed to provide the court with a complete set of the defendant's "previous twelve months of reports," which the court suspects may also reflect zero reportable hours, it may well be that the plaintiffs are not entitled to any damages for this time period.

1½% per month, is 18% per year.  Interest is calculated from "the first day of the month when the payment was due to the date when payment was made." *Id.*, Ex. A at 30.  Based on this provision, the plaintiffs seek $9,242.42, plus $4.56 in per diem interest from June 4, 2012 for interest on the five audits as well as the late paid contributions for July 2008, May 2009 and June 2009. *See Bardavid Letter*, dated January 28, 2013, at 2.

       (1)       **Interest on the Unpaid Contributions Pursuant to the Audits**

As discussed above, plaintiffs failed to provide sufficient documentation for its damages request for unpaid contributions pursuant to three of the five audits, namely Audit #08-0425-RI, Audit #09-403 and Audit #09-404.  Accordingly, the undersigned recommends that interest on these audits be denied with leave to renew upon the submission of the appropriate documentation as well as a clear explanation of how plaintiffs arrived at each damages figure.

With respect to Audit #07-0775, the documentation for the calculation of interest on the unpaid contributions reported in Audit #07-0775 is deficient and does not provide a basis for the amount of interest sought.  *See Jones Decl.*, dated Mar. 29, 2011, ¶¶ 22-24, Ex. B.  Although the Declaration of Ken Jones refers to "Exhibit B at 7 of 8 and 8 of 8" as support for the amount of interest plaintiff seeks for this audit, this Exhibit refers to a different Audit  as well as a different time period.  *Id.*  Accordingly, the undersigned recommends that interest on Audit #07-0775 be denied with leave to renew with the appropriate documentation as well as a clear explanation of how plaintiffs arrived at each damages figure, including the end dates for such interest.

 With respect to Audit #08-0424, the plaintiffs seek an amount of interest due on the delinquencies identified in this audit pursuant to Article IX, Section 3 of the Agreement, as amended on October 28, 2003.  *Id*. ¶¶ 35-37, Ex. B, at 5 of 6 to 6 of 6.  Based on this provision,

the plaintiffs seek $110.45 in interest through March 12, 2008, plus accrued interest until the date of payment.  The attached Exhibit reflects this amount in interest.  Accordingly, the undersigned recommends that plaintiffs be awarded interest on the unpaid contributions pursuant to Audit #08-0424 in the amount of $110.45 in interest through March 12, 2008, plus accrued interest until the date of payment.

   (2)  **Interest on Late Paid Contributions for July 2008, May 2009, June 2009**

   Prior to the commencement of this action, defendant made late payments by paying the contributions due for the months of July 2008, May 2009 and June 2009 (for Tier 1 employees) after their respective due dates.  *See Puccio Supplemental Decl*., dated June 4, 2012, at ¶ 22, Ex. E.  Plaintiffs seek interest on those late paid contributions calculated from the first day of the month in which the contributions were due through the date paid in the total amount of $1,088.95.  *See Hurtado Supplemental Decl.*, dated June 4, 2012, ¶ 34, Ex. C.  Plaintiffs' records reflect that defendant paid late the contributions due for these three months, and that defendant owes this amount in total interest.  Accordingly, the undersigned recommends that plaintiffs be awarded a total of $1,088.95 in interest on late paid contributions due for the months July 2008, May 2009 and June 2009.

**(D)**  **Liquidated Damages**

   ERISA section 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(c) provides for an award of statutory damages equal to the greater of interest on unpaid contributions or liquidated damages provided for in the plan not to exceed 20 percent of the unpaid contributions.  The Agreement does likewise.  *See Hurtado Supplemental Decl.*, dated June 4, 2012, ¶ 36.

   With respect to Audit #08-0425-RI, Audit #09-403, Audit #09-404 and Audit #07-0775,

given that (i) the liquidated damages calculations are based in part on the plaintiffs' interest on unpaid contributions calculations, and (ii) the documentation for the plaintiffs' calculation of interest for the unpaid contributions is deficient and does not provide a basis for the amount of interest sought, the court recommends that an award for liquidated damages pursuant to these audits be denied with leave to renew upon submission of affidavits and/or the additional documentation needed to verify the requested award.

With respect to Audit #08-0424, twenty percent of $651.86 in unpaid contributions is $130.17 (rounded to the nearest cent) and the total interest due on unpaid contributions is $110.45. Accordingly, the undersigned recommends that plaintiffs be awarded $130.17 in liquidated damages.

**(E)     Audit Fees**

Section 1132(g)(2)(E) allows the court to award "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). Courts in this district have previously invoked the discretionary authority under § 1132 in order to award auditor's fees. *See Trustees of Empire State Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Management Co-op, and Scholarship Funds v. Protac Constr., Inc.,* No. CV 11-2288 (ADS)(GRB), 2013 WL 991616, at *7 (E.D.N.Y. Feb. 10, 2013); *see also George v. ECDO, Inc.,* No. 10 Civ. 1762 (DAB) (JFC), 2012 WL 3822230, at *3 (S.D.N.Y. July 30, 2012) (collecting cases). In addition, the Trust Agreement required the defendant to remit audit fees incurred. *See Puccio Supplemental Decl.*, dated June 4, 2012, Ex. A at 30-31; *Hurtado Supplemental Decl.*, dated June 4, 2012, ¶ 43. Plaintiffs seek $5,849.80 in audit fees for five audits conducted in this action, namely Audit # 07-0775, Audit # 08-0424, Audit #08-0425-RI, Audit # 09-0403 and

Audit #09-0404.

As discussed above, plaintiffs failed to provide sufficient documentation for its damages request for unpaid contributions pursuant to three of the five audits, namely Audit #08-0425-RI, Audit #09-403 and Audit #09-404. Accordingly, the undersigned recommends that an award for audit fees pursuant to these audits be denied with leave to renew upon submission of the appropriate documentation and contemporaneous time records for the audit fees they contend were reasonably incurred in connection with this action.

With respect to the Audit # 07-0775 and Audit # 08-0424, the payroll audit reports for these audits reflect that Wagner & Zwerman LLP charged the Funds $1,015.60 in fees for Audit #07-0775 and $596.70 in fees for Audit #08-0424. *See Jones Decl.*, dated March 29, 2012, ¶¶ 27, 40, Exs. A, B; *see also Hurtado Supplemental Decl.*, dated June 4, 2012, ¶ 44. Accordingly, the undersigned recommends that plaintiffs be awarded audit fees in the amount of $1,612.30.

**(F)     Attorneys' Fees**

The Trustees are also entitled to reasonable attorneys' fees pursuant to the Agreement and Section 502(g)(2) of ERISA. *See Hurtado Supplemental Decl.*, dated June 4, 2012, ¶ 45; *see also* 29 U.S.C. §1132(g)(2). ERISA requires an award of reasonable attorney's fees and costs upon a determination that an employee benefit plan is entitled to judgment for unpaid contributions. 29 U.S.C. § 1132(g)(2)(D). When assessing the reasonableness of legal fees, the court must determine the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). The process of establishing a

14

reasonable fee has been evolving in this Circuit in recent years. The traditional approach has been the "lodestar" method, which determines the "number of hours reasonable expended on the litigation," multiplied by a "reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *and see Whitney v. Jet Blue Airways Corp.*, 2009 WL 4929274, at *2 (E.D.N.Y. Dec 21. 2009) (giving background and history to lodestar approach). In 2007, however, the Second Circuit called for abandoning the term "lodestar" in favor of a "presumptively reasonable fee." *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007). The presumptively reasonable fee is still determined with the reference to the number of hours reasonably expended on a matter and the reasonable fee to be charged for those hours. Under this approach, the court looks to multiply, case-specific factors to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplies that rate by the number of hours reasonably spent on the case, to arrive at the presumptively reasonable fee. *See id*., at 187-190 (listing factors to be considered, including factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

In April 2010, the Supreme Court issued an opinion endorsing the lodestar method and expressing skepticism about the *Johnson* approach. *See Perdue v. Kenny A. Ex rel Winn*, 130 S. Ct. 1662, 1672 (2010). At least one court has noted that *Purdue* "appears to cast doubt on the viability of . . . *Arbor Hill*," which relied in part on the *Johnson* factors. *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514, n.4 (S.D.N.Y. Mar. 15, 2011). Another court has concluded that, "[w]hatever the terminology," both *Arbor Hill* and *Purdue* "require the Court to consider case-specific factors in determining the reasonableness of the hourly rate and the number of hours expended." *Brown v. Starrett City Assocs. Inc.*, 2011 WL 5118438, at *4, n. 5

(E.D.N.Y. Oct. 27, 2011) (citing *Shim v. Millennium Group*, 2010 WL 2772493, at *2 & n. 3 (E.D.N.Y. June 21, 2010)).  It would appear that although use of the *Johnson* "method" is now proscribed, reference to the *Johnson* "factors" is still useful in calculating a presumptively reasonable fee in this Circuit.  *See Shim*, 2010 WL 2772493 at *2 & n. 3.  Therefore, whether the calculation is referred to as the lodestar or as the presumptively reasonable fee, courts will take into account case-specific factors to help determine the reasonableness of the hourly rates and the number of hours expanded.  *See Archie Comic Publications, Inc. v. Penders II,* No. 10 Civ. 8858 (RMB)(MHD), 2012 WL 3245421, at *1 & n. 3 (S.D.N.Y. Aug. 6, 2012) (observing that "the term 'lodestar' has recently had a somewhat up-and-down fate in the Second Circuit.  After years of usage of this term, the Second Circuit seemed to banish it in the series of *Arbor Hill* opinions, but it has since made a comeback after the Supreme Court utilized it last year [in *Purdue*] without questioning its appropriateness as a descriptor of the required fee analysis") (citations omitted).  And, nothing in *Purdue* changes the rule that those factors are to be considered within the context of the relevant legal "community," traditionally defined as "the district where the court sits."  *Arbor Hill*, 522 F.2d at 190 (internal citation omitted).  Here, plaintiffs seek $19,711.33 in attorney's fees and costs.  Plaintiffs retained two law firms to represent them in this action: Cohen, Weiss and Simon, LLP who was hired on July 1, 2011, and plaintiffs' previous law firm, the Law Offices of Avram Schreiber.  *See Hurtado Supplemental Decl.*, dated June 4, 2012, ¶ 45.  The submissions for each firm will be addressed separately.

### (1)    Fees Expended by Cohen Weiss and Simon, LLP

Plaintiffs seek $13,362.50 in attorney's fees which represents partner time billed at a rate of $275 per hour, associate time billed at a rate of $225 per hour, and paralegal time billed at a

rate of $100.00 per hour for fees expended by Cohen, Weiss and Simon, LLP.  In support of the

application, plaintiffs submitted contemporaneous time records detailing the tasks the attorneys

completed for this case and the number of hours expended on each task for the legal services

rendered by Cohen, Weiss and Simon, LLP.  The fees charges are as follows: (a) $275

an hour for Peter D. DeChiara, a partner with over twenty-four years experience who billed for

.5 hours; (b) $275 an hour for Joseph J. Vitale, a partner with over twenty-four years of

experience who billed for .1 hours; (c) $225 an hour for Noelia E. Hurtado, an associate with five

years experience who billed for 26.5 hours; (d) $225 an hour for Danya Ahmed, an associate with

two years experience; (e) $225 an hour for N.E. Jaramillo, an associate, who billed for 6.2

hours[6]; (f) $100 an hour for Benjamin Berger, a paralegal who billed for 62.9 hours; and (g) $100

an hour for Kerri Judd, a paralegal who billed for 8.1 hours, respectively.  *See Hurtado*

*Supplemental Decl.*, dated June 4, 2012, ¶ 48.  Based on the court's review of similar cases in

this district involving defaulting defendants liable for unpaid contributions to benefit funds, the

undersigned finds these rates to be within the reasonable range.  *See Townsend v. Benjamin*

*Enterprises, Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) ("this Court has instructed that determination of

a reasonable hourly rate contemplates a case-specific inquiry into the prevailing market rates for

counsel of similar experience and skill to the fee applicant's counsel, an inquiry that may include

judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates

prevailing in the district"); *see also Gagasoules v. MBF Leasing LLC,* 2013 WL 1760134, at *4

(E.D.N.Y. Apr. 24, 2013) ("In the Eastern District of New York, depending on the nature of the

---

[6]Although plaintiffs' Supplemental Declaration does not list this associate in their
summary, the time records of Cohen, Weiss and Simon, LLP reflect that N.E. Jaramillo, an
associate worked on this matter.

action, extent of legal services provided and experience of the attorney, hourly rates range from approximately $300 to $400 per hour for partners, $200 to $300 per hour for senior associates, and $100 to $200 for junior associates") (collecting cases); *Ferrara v. Prof'l Pavers Corp.,* No. 11-CV-1433 (KAM)(RER), 2013 WL 1212816 (E.D.N.Y. Mar. 23, 2013) ("Recently, reasonable hourly rates in this district have ranged from approximately $200 to $400 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals").

The court has also reviewed the time records submitted by plaintiffs for Cohen, Weiss and Simon, LLP and find that the time expended is reasonable for this case. However, not all of the hours sought are supported by the evidence submitted. Although plaintiffs seeks attorneys' fees for Cohen, Weiss and Simon, LLP for a total of 98.7 hours billed, *see Hurtado Supplemental Decl.*, dated June 4, 2012, ¶ 48, the court's independent calculation of the hours billed by Cohen, Weiss and Simon, LLP amount to 19.5 hours for Ms. Hurtado and 57.5 hours for Mr. Berger, and include 6.2 hours for N.E. Jaramillo. (*Id.,* Ex. D). Thus, the court will adjust the amount of attorney's fees sought to reflect the billing records provided. Accordingly, the undersigned recommends that the plaintiffs be awarded attorney's fees in the amount of $12,642.50 for the fees expended by Cohen, Weiss and Simon, LLP.

### (2)     Fees Expended by the Law Offices of Avram Schrieber

Plaintiffs seek $5,643.50 in attorneys' fees and costs expended by the Law Offices of Avram Schrieber. However, the plaintiffs have failed to provide any information concerning the names of the attorneys, the attorneys' professional backgrounds, expertise or experience. *See Supplemental Puccio Decl.*, dated March 14, 2012, ¶¶ 24-25. Plaintiffs have provided contemporaneous time records, but have failed to provide any summary of each attorneys' time

18

expended on this case.  *See id.*, Ex. F.  Based on the court's independent calculation, the

plaintiffs seek reimbursement as follows:   (a) $300 per hour for AHS who billed for .5 hours; (b)

$300 per hour for AHS_6 who billed for 7.4 hours; (c) $225 per hour for LCL who billed for .8

hours; (d) $225 per hour for WL_2 who billed .6 hours; (e) $225 per hour for KO who billed for

11.5 hours; (f) $80 per hour for KO_1 who billed 1.6 hours; and (g) $80 per hour for DD_3 who

billed for 3.3 hours.  *See id.*  Based on the nature of the work done by these individuals, it

appears that AHS and AHS_6 expended time on tasks done by senior associates and LCL,

WL_2, KO expended time on tasks done by  junior associates, and KO_1 and DD_3 expended

time on administrative tasks performed by paralegals.

  With respect to the hourly rate charged in the billing records, because the plaintiffs have

failed to provide any biographical information concerning the attorneys, their positions at the law

firm, or the years of experience so as to justify the rates that they seek, the court recommends that

the billable rate for AHS and AHS_6 be reduced to $200 and the billable rate for LCL, WL_2,

and KO be reduced to $150 per hour.  *See Gagasoules ,* 2013 WL 1760134, at *4 (reducing the

billable rate of an attorney to $150 per hour where movant "failed to provide specific

biographical information concerning her years of experience, or even whether she was a senior or

junior associate, so as to justify the rates it seeks"); *Piltz v. Incorporated Vill. of Freeport*, No.

CV 07-4078 (ETB), 2011 WL 5825138, at *5 (E.D.N.Y. Nov. 17, 2011) ("[w]here, as here, the

moving party fails to provide any biographical information to support the reasonableness of the

rates, the court may use its discretion to award fees at a lower rate than requested") (citations

omitted); *Protection One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*, 553 F.

Supp. 2d 201, 209 (E.D.N.Y. 2008) ("[w]here the moving party fails to provide information on

the attorneys' and paralegals' backgrounds and experience, courts have used their discretion to award fees at a rate lower than requested").

The court has also reviewed the time records submitted by plaintiffs for the Law Offices of Avram Schrieber and find that the time expended is reasonable for this case. Accordingly, the undersigned recommends that the plaintiffs be awarded attorney's fees in the amount of $3,907.00 for the fees expended by the Law Offices of Avram Schrieber.

In summary, the undersigned recommends that plaintiffs be awarded attorneys' fees in the total amount of $16,549.50.

**(G)     Costs**

Plaintiffs also seek to recover costs in the amount of $705.33, which consists of $520.57 in costs incurred in connection with the representation by Cohen, Weiss and Simon, LLP and $184.76 in costs incurred in connection with the representation by the Law Offices of Avram Schrieber. *See Hurtado Supplemental Decl.*, dated June 4, 2012, ¶ 54, Exs. D, E; *Supplemental Puccio Decl.*, dated March 14, 2012, ¶ 25, Ex. F. Both firms have submitted detailed records reflecting the following reasonable costs: photocopying, fax transmissions, court filing fee, postage, and service fees. "Attorneys' fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Piltz*, 2011 WL 5825138, at *5 (internal quotation marks and citations omitted) (awarding costs for routine expenditures such as photocopies, process servers fees); *see Protac Constr., Inc.,* 2013 WL 991616, at *7 (awarding costs for filing fees). Upon review of the documentation provided, and consistent with ERISA's mandatory award of costs in a case such as this, *see* 29 U.S.C. § 1132(g)(2)(D), the undersigned recommends that plaintiffs be awarded $705.33 in costs.

**OBJECTIONS**

A copy of this Report and Recommendation is being electronically filed on the date below. Counsel for plaintiffs shall serve a copy of it on the defendant upon receipt and shall file proof of service with the court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
June 6, 2013

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge